Ernest WILLIAMS a/k/a Ernest
Floyd, Appellant,

v.

STATE of Indiana, Appellee.

No. 1083 S 352.

Supreme Court of Indiana.

Aug. 2, 1985.

Sheila Suess Kennedy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions for rape, a class A felony, I.C. § 35–42–4–1, criminal deviate conduct, a class A felony, I.C. § 35–42–4–2, criminal confinement, a class B felony, I.C. § 35–42–3–3(a)(2). The case was tried before a jury. Appellant received a ten year sentence for criminal confinement, a thirty year sentence for rape, and a thirty year sentence for criminal deviate conduct. The sentences for rape and criminal deviate conduct are to run concurrently. The sentence for criminal confinement is to run consecutively to the other two. Thus, appellant received a total of forty years.

Appellant raises five issues on appeal: (1) whether the trial court erred in permitting the State to present evidence concerning his incarceration before and during the trial; (2) whether he was unduly prejudiced by a visitation of the prosecuting attorney at trial; (3) whether trial court erred in allowing into evidence a pre-incident photograph of appellant; (4) whether there was sufficient evidence to support his convictions, and (5) whether the consecutive sentence for criminal confinement was supported by sufficient reasons.

These are the facts from the record that tend to support the determination of guilt. At approximately 5:30 a.m. on October 19, 1982, the victim left her apartment near the Greenbriar shopping center to go jogging. When she reached the parking lot of the shopping center, appellant grabbed her arm, displayed a gun and told her that he was going to shoot her. He then put the gun into her mouth and then pulled it out and fired a shot into the air. Subsequently, he took her to a nearby field and forced her to have sexual intercourse and oral sex with him. Toward the end of the incident, the victim grabbed his gun, threw it and ran to safety at a racquetball club. Two men at the club chased appellant from the shopping center, but did not catch him. The police found an automobile in the parking lot which did not belong to anyone in any of the nearby businesses. The keys were in the ignition. The owner of the car was appellant's girlfriend, and appellant's fingerprints were found in the car. Two days later, the victim selected appellant's photograph from a photo array.

I

Appellant argues that the trial court erred in permitting the State to present evidence concerning his incarceration before and during the trial.

Appellant presented the testimony of his friend, Marie Adams, to explain the presence of her automobile near the scene of the offenses. On cross-examination, the State attempted to impeach her testimony by inquiring as to how many times she had visited appellant in jail. Appellant objected to the questions on the grounds that they

were irrelevant and unduly prejudicial. The objection was overruled. The witness answered that she had visited appellant in jail approximately seven times.

Relevancy has been defined as evidence which renders the desired inference more probable than it would be without the evidence. *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d. 634. Evidence tending to prove a material fact is admissible. *Pirtle, supra.* Evidence which would otherwise be admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury ... McCormick § 185, at 435; *United States v. Chapin* (D.C.Cir.1975), 515 F.2d 1274; *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d. 899; *Hawkins v. State* (1941), 219 Ind. 116, 37 N.E.2d. 79.

The evidence here is relevant to the issue of the witness's bias and also indicates opportunity to plan a fabricated alibi defense. The potential for prejudice and hostility this evidence engenders does not rise to such an unfair level as would require reversal. Furthermore, the jury was instructed as follows:

> "The information which has been filed against the defendant, or the fact that defendant may have been arrested or held on the charge, is not to be considered as any evidence of guilt herein ..."

The trial court did not err in overruling appellant's objection.

## II

At trial, the victim testified that she selected appellant's photograph from a photo array several days after she was attacked. The police professionally conducted the photo-array and preserved it for trial. She also identified appellant in the courtroom. However, she admitted that she was unable to identify appellant in a live line-up which took place three months after the attack. The testimony of the victim, of other State's witnesses, and of the appellant revealed that during the three month period appellant had lost weight, cut his hair, and grown additional facial hair. On cross-examination of appellant, the prosecutor produced State's Exhibit Five, a photograph of appellant, and asked him to identify it. Appellant objected and now argues on appeal that the photograph is irrelevant and prejudicial. The trial court overruled the objection. Appellant then answered that the photograph fairly and accurately depicted his appearance on October 15, 1982, the date of the offenses.

The photograph was relevant to the issue of identity because it explained and corroborated the witness's inability to identify the appellant in a live line-up due to appellant's changed appearance. The photograph was not prejudicial because it was a fair and accurate representation of his appearance at the time of the offenses.

The trial court properly admitted the photograph into evidence.

## III

Appellant argues that the entrance of the Marion County Republican Prosecutor Stephen Goldsmith, an allegedly popular and visible politician, during the middle of the trial unduly prejudiced him. The record discloses that Prosecutor Goldsmith entered the courtroom during a recess in the trial and then remained seated at the State's table with his deputy when the proceedings resumed. Appellant objected to Prosecutor Goldsmith's presence in the courtroom. The trial court overruled the objection. Thereafter, Prosecutor Goldsmith elected to sit in the gallery.

Appellant claims the Prosecutor's action gave rise to the prejudicial inference that the offenses were so heinous, and the trial so significant, that the case could not be entrusted to his deputy prosecutor. We believe that the Prosecutor's action also gave rise to an equal and opposite inference i.e. that the State's case against appellant was so weak that it could not be entrusted to a deputy prosecutor, and thus, required the presence of the prosecutor. Appellant could have exploited the latter

inference to his advantage in final argument.

The trial judge has the duty to control the proceedings conducted before him, including any potentially disruptive behavior by witnesses, parties, spectators and attorneys. *Lawson v. State* (1980), 274 Ind. 419, 412 N.E.2d. 759. The prosecutor has a duty to supervise his deputies. It is up to the trial court to strike the proper balance between the prosecutor's supervision of his deputies at a trial and the potential for prejudice such active supervision may engender. Here, the trial court struck the proper balance.

### IV

Appellant argues that there is insufficient evidence to support his convictions.

This Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 185 Ind.App. 5, 387 N.E.2d. 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d. 1088.

The evidence recited in the statement of facts is clearly sufficient to support his convictions. The jury was not required to believe the alibi testimony of appellant's stepmother, *Tungate v. State* (1958), 147 N.E.2d 232, 238 Ind. 48, nor to reject the victim's in-trial identifications because of the dimness of light at the time of the attack, her misidentification at the live line-up, or her inability to provide an artist with a sufficient description to draw a successful likeness. She testified that the face-to-face attack lasted for twenty minutes and that the parking lot was well illuminated and that she made a conscious effort to mentally record his looks. The jury would additionally have been warranted in diminishing the misidentification by reason of the evidence of changed appearance. The verdicts were supported by sufficient evidence of identification.

### V

Appellant argues that his consecutive sentence for confinement was not supported by sufficient reasons.

It is also settled that when a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence. *Abercrombie v. State* (1981) [275] Ind. [407] 417 N.E.2d 316; *Gardner v. State* (1979) [270] Ind. [627] 388 N.E.2d. 513 *Washington v. State* (1981), Ind., 422 N.E.2d. 1218, 1221.

Here, the imposition of the consecutive sentence for confinement was supported by specific aggravating circumstances drawn from the manner in which appellant achieved his unlawful purposes and based upon a consideration of the facts of the confinement and the objectives to be served by the consecutive sentence.

The convictions are affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.