No. 91-469

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

KIM LAVAR COURCHENE,

     Defendant and Appellant.

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard Phillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Wendy Holton, Helena, Montana

     For Respondent:

     Michael Wellenstein, Asst. Attorney General, Helena,
Montana; Gerald Navratil, Dawson County Attorney,
Glendive, Montana

Submitted on Briefs: September 10, 1992

Decided: December 8, 1992

Filed: DEC 8 - 1992

FILED

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a jury verdict and sentence in the Seventh Judicial District Court, Richland County, finding defendant guilty of felony theft and sentencing him to four years suspended sentence in the Montana State Prison and assigning restitution in the amount of $980.00. We affirm.

We address the following issues on appeal:

1. Did the District Court abuse its discretion by accepting into evidence Kim Courchene's mug shot as well as testimony identifying it as such?

2. Did the District Court err in permitting a conversation in front of the jury concerning "other acts"?

3. Did the District Court abuse its discretion in permitting evidence of a photo line-up when the State used only a single photograph of Courchene for identification purposes?

4. Did the District Court err in failing to instruct the jury on the element of voluntariness?

5. Did the District Court err in instructing the jury on alternative definitions of the term "deception" ?

6. Can defendant reserve his claim of ineffective assistance of counsel until after this appeal?

This case involves the theft of a video camcorder rented from the Path store in Sidney, Montana on March 20 or 21, 1990. At that time, a young man came into the Path store and sought to rent the camcorder for the purposes of video-taping a wedding. Since owner

Tim Knaff did not know the man, he asked for identification. The customer provided an expired Utah driver's license issued to Kim Courchene, and later signed the invoice with that name. The address listed by the customer was a Sidney address which subsequently proved to be false. Following the rental of the camcorder, a store employee saw the customer get into a dark green Dodge or Ford four-door car with North Dakota license plates. The camcorder was never returned to the store.

Subsequent investigation revealed that a Kim Courchene lived in North Dakota, at one time with his mother Doris. No vehicle such as that described by the store employee was owned by either Courchene. Further investigation revealed that Kim Courchene had been issued a Utah driver's license in 1981; this expired in 1985. A duplicate of this driver's license was issued in 1982 because the original had been lost.

On April 19, 1990, Kim Courchene (Courchene) was charged by information in Richland County with the offense of theft. He was tried by a jury on May 5 and 6, 1991, and was found guilty of the offense charged. On July 22, 1991, the judgment and sentence were entered. Courchene was sentenced to a prison term of four years which were suspended. Courchene is required to comply with standard conditions of probation and in addition, to perform 100 hours of community service and pay restitution in the amount of $980 within a period of 18 months.

Courchene filed a timely notice of appeal and a motion for stay of execution of judgment and a motion to withdraw as attorney

3

on July 25, 1991. On August 5, 1991, the motion for stay was granted. The motion to withdraw as attorney was renewed in this Court on September 26, 1991, and the motion was remanded to the District Court for a ruling on October 2, 1991. On October 21, 1991, the District Court appointed new counsel for the purpose of pursuing this appeal.

I.

Did the District Court abuse its discretion by accepting into evidence Kim Courchene's mug shot as well as testimony identifying it as such?

Courchene contends that introduction into evidence of his mug shot was prejudicial to his case as it indicated to the jury that he had a past criminal record. Further, according to Courchene, this error is so egregious that his conviction should be reversed by this Court. The State argues that Courchene failed to object to this at trial and cannot now raise the issue on appeal.

Specific objections must be made to portions of testimony deemed inappropriate. State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193. Courchene did not make a specific objection at trial to any testimony revolving around mug shots and his subsequent prejudice; he is barred from objecting now. Section 46-20-104, MCA, procedurally bars review of alleged errors not objected to at trial:

> (2) Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as

4

provided in 46-20-701(2).

Section 46-20-701(2), MCA, states that unless an objection is made "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Courchene has not proved that his substantial rights have been prejudiced. Nor did Courchene argue this at trial. Because he did not object at trial, Courchene has waived his right to an appellate review. State v. Kao (1990), 245 Mont. 263, 800 P.2d 714.

We conclude that review of the mug shots is not allowed under the foregoing statute and authority. Nonetheless we review the evidence with regard to the mug shots in order to explain that even under a "plain error" theory, the facts in this case cannot warrant a reversal. The plain error doctrine which we invoke to review this evidence provides a remedy to prevent manifest injustice, even when a proper objection has not been made to the trial court. State v. Voegele (1990), 243 Mont. 222, 793 P.2d 832.

It is a general rule that "mug shots" of an accused will be allowed into evidence, if they are not unduly prejudicial and have substantial independent probative value. 23 C.J.S., Criminal Law § 1042 (1989). This type of photograph is admissible when identification of the accused as the criminal perpetrator is involved. Williams v. State (Ind. 1985), 480 N.E.2d 953. Because a police photograph or "mug shot" of defendant may be indicative of a prior criminal history, its admission at trial may be prejudicial to him. People v. Thatcher (Colo. 1981), 638 P.2d 760.

These types of photographs are not per se inadmissable; the

5

court has great discretion in using them for identification purposes, but only if the prosecution has disguised the photos by removing any law enforcement information that may be on the photo. 23 C.J.S., Criminal Law § 1043 (1989). Here, the police had taped over any justice system information that was printed on the card. The mug shots of Courchene that were used were used for identification purposes. Even so, at trial neither eye-witness could absolutely identify Courchene in person from the photos.

Despite this lack of identification, Courchene argues that the use of the pictures prejudiced him to the jury. Courchene relies on a leading case in this area, U.S. v. Harrington (2d Cir. 1973), 490 F.2d 487. Courchene argues Harrington's applicability and precedence for reversing his conviction. The reversal of the Harrington Court was based in part upon the fact that the defendant did not take the stand at trial.

Such was also the case in Barnes v. U.S. (D.C. App. 1966), 365 F.2d 509, another case relied upon by Courchene. In associating mug shots of the defendant with past criminal acts, the Barnes Court stated:

> It is well-settled law that the criminal record of a defendant may not be introduced into evidence at trial unless the defendant takes the stand . . . .

Barnes, 365 F.2d at 510.

Courchene took the stand. He testified to being "nailed for driving under the influence." At another time he testified that police "hauled me to jail and they took my license from me." The testimony was provided on direct examination on questioning by his

6

own counsel. Defendant Courchene's own testimony established that he had engaged in conduct which could have resulted in mug shots being taken of him. The facts here significantly differ from both Harrington and Barnes.

Further, Courchene's entire defense relied on the fact that he was not the person who rented the camcorder. He based this on the fact that he had lost his driver's license in 1982 and had to have it replaced. His testimony insinuated that it must have been the person who found his lost license who stole the camcorder. However, his testimony also revealed that the lost license had his photo on it, the replacement did not. The testimony of the store owner indicated that the driver's license that he saw did not have a photo. When asked about this, Courchene had no answer.

We conclude that the failure on the part of Courchene to object to the mug shot testimony waived appellate review under the statutes and case law of Montana. We further conclude that even when a "plain error" theory is applied, we cannot reverse Courchene's conviction because he has not proven that he was prejudiced by use of the mug shots.

We hold that the District Court did not abuse its discretion by accepting Courchene's mug shots into evidence.

II.

Did the District Court err in permitting a conversation in front of the jury concerning "other acts"?

During testimony by Sidney police Officer David Schettine (Schettine), he stated that he had shown a photographic line-up to

7

a person employed by the Mini-Mart in Sidney. Courchene's counsel objected to this on the basis of a Just violation, and the court sustained it. State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The State went on to argue to the court that it should be permitted to use this information. A discussion as to the appropriateness of Just to the questioning then took place in front of the jury.

Courchene contends that the jury was left to speculate as to the nature and quality of the other bad acts which the State was attempting to admit into evidence. The State contends that Courchene did not object at trial and that this Court should not entertain this issue.

We conclude that in the absence of a proper objection in the course of trial, this issue should not be considered by this Court. State v. Howie (1987), 228 Mont. 497, 744 P.2d 156.

We hold that this issue will not be ruled upon because it was not properly raised at trial.

### III.

Did the District Court abuse its discretion in permitting evidence of a photo line-up when the State used only a single photograph of Courchene for identification purposes, thus prejudicing him at trial?

Courchene argues that the evidence established that two of the State's witnesses were shown only a single picture of him for identification purposes. He, therefore, argues that the conviction must be reversed. The record does not support his contentions.

The record establishes that officer Schettine made a

8

photographic line-up containing four pictures, one of which was that of Courchene. Officer Schettine testified that he showed a four-photograph line-up to both Mr. Knaff and Ms. VanHook, and that both of them identified Courchene from the line-up. As a result the record contains positive testimony by Officer Schettine establishing the use of a four-photograph line-up rather than a single photo.

The record also shows that Mr. Knaff's testimony regarding the identification was ambivalent; he was not certain how many photographs he had seen. Ms. VanHook testified that she was shown only one photograph, directly contradicting Officer Schettine.

We conclude that the record is inconclusive as to which identification method was used. The result is that an issue of fact as to what transpired was raised and was determined by the jury.

We hold that the District Court did not abuse its discretion in permitting evidence of a photo line-up.

IV.

Did the District Court err in failing to instruct the jury on the element of voluntariness?

Courchene contends that § 45-2-202, MCA, provides that a material element of every offense is a voluntary act and the District Court has the responsibility to instruct the jury on all elements of a crime. Courchene admits that he did not submit an instruction on voluntariness to the court; neither did the State. Again, Courchene contends that this Court should invoke the plain

9

error doctrine to reverse his conviction because the District Court should have instructed the jury. The State argues that Courchene did not object to this at trial and cannot now raise the issue to this Court.

We will not predicate error upon failure to give an instruction when the party alleging the error failed to offer the instruction. State v. Evans (1991), 247 Mont. 218, 806 P.2d 512. The record reveals that Courchene did not submit an instruction on voluntariness to the District Court. Further, Courchene did not object to the lack of instruction at the District Court. Therefore, we decline to consider this issue because it is not properly before the Court.

V.

Did the District Court err in instructing the jury on alternative definitions of the term "deception" ?

Courchene was charged with theft by deception. Courchene argues that the District Court instructed the jury on the five different meanings of deception found in § 45-2-101(17), MCA. According to Courchene, only one of these definitions makes any sense and the use of all five prejudiced him by confusing the jury. The State argues that Courchene not only did not object at the trial court level, but that the instruction was his own instruction.

The record reveals that it was defendant Courchene who submitted the instruction containing the five meanings of deception. We conclude that defendant may not now object to the

10

instruction which he specifically requested.

## VI.

Can defendant reserve his claim of ineffective assistance of counsel until after this appeal?

Courchene seeks to reserve his claim of ineffective assistance of counsel until after the direct appeal. He cites two prior Orders of this Court as precedent for the filing of a petition for post-conviction relief when a claim of ineffective assistance of counsel is filed. The State argues that a claim of ineffective assistance of counsel must be made on direct appeal if the basis for the claim is rooted in the record. According to the State, when the court is required to go beyond the record for resolution of the issue, then a petition for post-conviction relief is appropriate.

Our statutes mandate that when a petitioner has been afforded a direct appeal of the petitioner's conviction, grounds for relief which could have been raised during the appeal, may not be raised in a petition for post-conviction relief. Section 46-21-105, MCA. Courchene raises no specific issues nor states any specific claims as to the basis of his claim for ineffective assistance of counsel.

We conclude that the defendant may not reserve his claim of ineffective assistance of counsel with regard to any matters which appear in the trial record. We do point out that if defendant has claims of ineffective assistance of counsel which encompass matters outside the record, it may be that a petition for post-conviction relief is appropriate. State v. Black (1990), 245 Mont. 39, 798

11

P.2d 530; U.S v. Birges (9th Cir. 1984), 723 F.2d 666.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice R. C. McDonough did not participate in this matter.

December 8, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Wendy L. Holton
Attorney at Law
44 W. Sixth Ave.
Helena, MT   59601

HON. MARC RACICOT, Attorney General
Micheal Wellenstein, Assistant
Justice Building
Helena, MT  59620

Gerald Navratil
Dawson County Attorney
P. O. Box 1307
Glendive, MT  59330-1307

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy