!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 3.2//EN">

No. 00-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 208

STATE OF MONTANA,

Respondent/Respondent,

v.

KENNETH LEROY WHITLOW,

Petitioner/Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Brittany Wood, University of Montana, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Michael S. Wellenstein,

Assistant Attorney General, Helena, Montana

George H. Corn, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs: January 4, 2001

Decided: October 18, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Kenneth Leroy Whitlow appeals from the Opinion and Order issued by the Twenty First Judicial District Court, Ravalli County, dismissing his petition for postconviction relief. We reverse and remand.

¶2 Whitlow raises the following issues on appeal:

¶3 1. Did the District Court err when it determined that Whitlow's petition was not filed within the applicable statute of limitations?

¶4 2. Did the District Court err when it determined that Whitlow's petition was barred because he could have reasonably raised his claim of ineffective assistance of trial counsel on direct appeal?

¶5 3. Did the District Court err when it denied Whitlow's motion to amend his petition to allege a claim of ineffective assistance of appellate counsel?

## BACKGROUND

¶6 On August 18, 1993, the State charged Whitlow with the aggravated kidnaping of a six-year-old girl and sexual intercourse without consent. James G. Shockley represented Whitlow during the course of the District Court proceedings. A jury found Whitlow guilty of both counts and the District Court sentenced Whitlow to 40 years for the crime of sexual intercourse without consent, 10 years for the crime of aggravated kidnaping, and 10 years for the use of a weapon during the crimes. The court found Whitlow to be a persistent felony offender and enhanced his aggravated kidnaping sentence by 60 years.

¶7 Whitlow appealed and was represented by both Mr. Shockley and William F. Hooks.

On direct appeal, Whitlow did not raise a claim of ineffective assistance of counsel. We affirmed Whitlow's conviction. *State v. Whitlow* (1997), 285 Mont. 430, 949 P.2d 239.

¶8 On March 17, 1999, Whitlow filed a petition for postconviction relief. Whitlow contended that he was denied his right to effective assistance of counsel when his trial counsel, Mr. Shockley, failed to ask follow-up questions during his voir dire of jurors Felix, Brouelette, and Sellers to determine whether they were biased against him. The State filed a motion to dismiss Whitlow's petition in which it contended Whitlow could have reasonably raised the issue of whether he was denied effective assistance of counsel on direct appeal. Therefore, the State argued, Whitlow was barred from raising the issue in his petition for postconviction relief pursuant to § 46-21-105(2), MCA. Whitlow responded that his claim of ineffective assistance could not have been raised on direct appeal because, among other things, it was based on evidence outside the trial record. Alternatively, Whitlow requested permission to amend his petition to include a claim of ineffective assistance of appellate counsel for appellate counsel's failure to raise a claim of ineffective assistance of trial counsel.

¶9 On December 21, 1999, the District Court granted the State's motion to dismiss. The court concluded that Whitlow's petition was barred by the one-year statute of limitations set forth in § 46-21-102(1), MCA (1997). The court also determined that Whitlow's sole support for his claim of ineffective assistance of trial counsel was to be found within the trial record. Thus, the court concluded that Whitlow's claim was barred by § 46-21-105(2), MCA, because it could have reasonably been raised on direct appeal. Lastly, the court stated that even if it were to allow Whitlow to amend his petition to allege ineffective assistance of his appellate counsel for not raising the ineffectiveness claim on direct appeal, Whitlow's petition would still "ultimately be dismissed as time barred." Whitlow appeals.

## STANDARD OF REVIEW

¶10 The standard of review of a district court's denial of a petition for postconviction relief is whether substantial evidence supports the findings and conclusions of the district court. We review the district court's findings to determine if they are clearly erroneous and we review the district court's conclusions to determine if they are correct. *State v. D'Amico*, 2000 MT 63, ¶ 7, 299 Mont. 57, ¶ 7, 997 P.2d 773, ¶ 7.

## ISSUE ONE

¶11 Did the District Court err when it determined that Whitlow's petition was not filed within the applicable statute of limitations?

¶12 The District Court concluded that Whitlow's petition was barred by the one-year statute of limitations set forth in § 46-21-102(1), MCA (1997), because it was filed over one year after we affirmed his conviction and denied his petition for a rehearing. The State concedes that this conclusion was in error. The State observes that pursuant to § 46-21-102 (1)(b), MCA, if an appeal of a conviction is taken to the Montana Supreme Court, the conviction does not become final for purposes of the statute of limitations on postconviction relief petitions until the time for petitioning the United States Supreme Court for review expires. According to the State, this occurred on March 30, 1998, less than one year before Whitlow filed his petition for postconviction relief. For the foregoing reason, we hold that the District Court's conclusion that Whitlow's petition was time-barred is erroneous.

## ISSUE TWO

¶13 Did the District Court err when it determined that Whitlow's petition was barred because he could have reasonably raised his claim of ineffective assistance of trial counsel on direct appeal?

¶14 Whitlow's claim of ineffective assistance of counsel is based on the voir dire of jurors Felix, Sellers, and Brouelette. Whitlow claimed that his trial counsel failed to ask follow-up questions after these jurors indicated that they might be biased. The following are excerpts from the transcript of the State's voir dire:

### Juror Felix

Mr. [George H.] Corn [Ravalli County Attorney]: And I'll come down here, we'll start with you, Mr. Felix. Have you heard anything about the case?

Mr. Felix: Yes, I read about it in the papers and discussed it with the family.

Mr. Corn: That was about six months ago or seven months ago?

Mr. Felix: That was after the incident occurred.

Mr. Corn: Is there anything that you recall from your - from that time that would prevent you from reserving judgment until all the evidence came in in this case?

Mr. Felix: No.

## Juror Sellers

Mr. Corn: Ms. Sellers, have you heard about the case?

Ms. Sellers: No.

Mr. Corn: Well, I'll pass on all those questions then to you. Is there anything so far that we've discussed, though, that would prevent you from being impartial to either side in this case?

Ms. Sellers: Well, I would hope not, but the nature of the case is an upsetting thing.

Mr. Corn: Would you agree with me that most types of crimes, by their nature, are upsetting?

Ms. Sellers: Yes.

Mr. Corn: And would you also agree that it's important in our system that jurors make factual determinations about whether or not someone committed a crime?

Ms Sellers: Correct.

## Juror Brouelette

The Clerk: James Brouelette.

The Court: Do we need - I can talk to you privately in here if it's something we need to go in chambers for, that's done quite often.

Mr. Brouelette: Well, maybe I can just tell you. When you were asking me if I could be impartial, I'm going to try to be impartial, but one of my daughters goes with one of my [sic] boys out of Pinesdale, so I have heard about this.

Mr. Corn: Do you realize that what you might have heard . . . is not evidence in this case?

Mr. Brouelette: Right, right.

Mr. Corn: Thank you.

Mr. Brouelette: And I have read everything that they put [in] the paper. I just don't know how partial - you know -

Mr. Corn: And you have to tell me and make that decision yourself. If the Judge instructs -

Mr. Brouelette: I'll try.

Mr. Corn: - you under oath?

Mr. Brouelette: I do have three little girls, so it's hard to be impartial.

Mr. Corn: All right. Well, I'm going to let you wrestle with that. Mr. Brouelette, have you heard the questions that I have asked the other jurors?

Mr. Brouelette: I have.

Mr. Corn: Is there anything I touched upon - and I've been over a fair amount of material - but unless there's something specific - or was there anything that I touched upon that you need to discuss with me at this point?

Mr. Brouelette: No, I read it when it happened, that's the last I heard of it.

Mr. Corn: Have you - Based on what you read, is there anything that you read about that that would prevent you from reserving judgment in this case?

Mr. Brouelette. No.

¶15 The District Court held that Whitlow's petition was barred pursuant to § 46-21-105(2), MCA, because he should have raised his claim of ineffective assistance of counsel in his direct appeal. In this regard, the court found that Whitlow's sole support for his claim of

ineffective assistance of trial counsel was to be found within the trial record.

¶16 "[G]rounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided" in a petition for postconviction relief. Section 46-21-105(2), MCA. We have held that where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal. *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, ¶ 12, 973 P.2d 233, ¶ 12. Conversely, where the allegations of ineffective assistance of counsel cannot be documented from the record in the underlying case, those claims must be raised by petition for postconviction relief. *Hagen*, ¶ 12.

¶17 In order to establish a claim of ineffective assistance of counsel, a defendant must prove that defendant's counsel's performance was deficient and that counsel's deficient performance was prejudicial. *See, e.g., State v. Chastain* (1997), 285 Mont. 61, 63, 947 P.2d 57, 58. With regard to establishing that counsel's performance was deficient, we have stated:

> A defendant must overcome the presumption that under the circumstances the action which he challenges might be considered sound trial strategy. Counsel's trial tactics and strategic decisions not only are entitled to great deference when reviewed on a claim of ineffective assistance of counsel, but they cannot be the basis upon which to find ineffective assistance of counsel.

*Bone v. State (1997), 284 Mont. 293, 303, 944 P.2d 734, 740 (citations omitted).*

¶18 Whitlow insists that in order to overcome the presumption that his trial counsel's decision not to further question or challenge jurors was tactical, and thus not ineffective, he must develop facts outside the trial record. In this regard, Whitlow submitted an affidavit of his trial attorney to the District Court in which his trial attorney stated that he could recall no particular tactical reason for not questioning or moving to excuse Jurors Sellers, Brouelette or Felix.

¶19 The State argues that in order to hold that Whitlow could not have reasonably raised his ineffectiveness claim on direct appeal we must overrule *Chastain*. The State observes that in *Chastain* we reviewed a claim of ineffective assistance of counsel on direct appeal in which a defendant contended that his trial attorney had failed to adequately challenge prospective jurors. The State notes that we decided Chastain's ineffective assistance of

counsel claim in his favor despite the fact that there was "nothing in the record" to explain counsel's failure to ask follow-up questions or move to exclude the potentially biased prospective jurors. *See Chastain*, 285 Mont. at 65, 947 P.2d at 60. The State insists that *Chastain* establishes that ineffective assistance of counsel claims such as Whitlow's can reasonably be raised on direct appeal.

¶20 Chastain was convicted of sexual intercourse without consent and sexual assault involving three young girls. On direct appeal from his conviction, Chastain contended that he was denied effective assistance of counsel due to his counsel's failure to further question two prospective jurors or move to exclude them. One juror indicated during defense counsel's voir dire that he had read about Chastain's case in the newspaper and had strong feelings about it. Further questioning of this juror occurred out of the jury's presence in chambers. During questioning in chambers, the juror stated that someone had attempted to abduct his younger sister and that this could bias his judgment unfavorably toward the defendant. Despite this fact, defense counsel did not question the juror further to discover whether he could render an impartial decision nor did defense counsel move to exclude this juror. A second juror stated that she remembered seeing an article about the case in the newspaper. When defense counsel questioned whether it would bias her judgment, she stated, "It's hard for me to say. I do have-when I read about something like that, I do kind of evoke some strong feelings." Defense counsel did not pursue any further questioning nor did he move to exclude this juror. We observed that nothing in the record explained trial counsel's decision not to further question or move to exclude either juror. *Chastain*, 285 Mont. at 65, 947 P.2d at 60. We concluded that "the statements of both prospective jurors . . . demanded, at a minimum, additional inquiry." *Chastain*, 285 Mont. at 65, 947 P.2d at 60. As a result, we held that counsel's failure amounted to ineffective assistance of counsel. *Chastain*, 285 Mont. at 65-66, 947 P.2d at 60.

¶21 We disagree that in order to conclude that Whitlow's ineffectiveness claim is not record based we must overrule *Chastain*. Instead, we continue to believe that the statements of the jurors in *Chastain* clearly expressed a potential for bias against the defendant and demanded further inquiry by counsel. Unlike in *Chastain,* trial counsel's decision not to further question prospective jurors in the instant case, however, is capable of a satisfactory explanation. One prospective juror indicated that he had read about the case; another prospective juror indicated that she felt that the case was of an upsetting nature; a third prospective juror thought it might be hard to be impartial because he had three young daughters. All three prospective jurors indicated that they could reserve judgment until the facts had been presented. Trial counsel could have known other facts

about these prospective jurors which led counsel to reasonably believe that, despite their possible prejudices, placing these jurors on the panel would be favorable to his client. "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia* (7th Cir. 1991), 922 F.2d 413, 417-18. Therefore, in order to establish that his trial counsel's decision not to question or challenge prospective jurors was not the product of sound trial strategy, Whitlow would have to go beyond the trial record.

¶22 Applying the preceding analysis to the instant case, we hold that Whitlow's ineffective assistance of counsel claim could not have reasonably been raised on direct appeal because his allegations of ineffectiveness cannot be documented from the record in the underlying case. *See Hagen*, ¶ 12.

¶23 For the aforementioned reasons, we reverse the District Court's conclusion that Whitlow's ineffective assistance of counsel claim is barred by § 46-21-105(2), MCA. Nothing in the foregoing opinion should be construed as comment on the merits of Whitlow's claim.

## ISSUE THREE

¶24 Did the District Court err when it denied Whitlow's motion to amend his petition to allege a claim of ineffective assistance of appellate counsel?

¶25 Because we have held that Whitlow was not required to raise his claim of ineffective assistance of trial counsel during the direct appeal from his conviction, his claim of ineffective assistance of appellate counsel is moot.

¶26 Reversed and remanded.

/S/ JIM REGNIER

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

Justice Jim Regnier concurring.

¶27 I write separately to express my view that, had I the votes to do so, I would modify, in part, our holding in *Chastain*.

¶28 As the Court's opinion more thoroughly discusses, we reviewed, in *Chastain*, a claim of ineffective assistance of counsel on direct appeal where the defendant asserted that his trial attorney failed to adequately challenge two prospective jurors. During questioning, both jurors stated they had prior experiences or knowledge that could potentially bias their decisions. Defense counsel asked no further questions and did not move to exclude either juror. Upon our review of this record, we concluded that "the statements of both prospective jurors . . . demanded, at a minimum, additional inquiry." *Chastain*, 285 Mont. at 65, 947 P.2d at 60. From this, we held that counsel's failure amounted to ineffective assistance of counsel. *Chastain*, 285 Mont. at 65-66, 947 P.2d at 60.

¶29 I agree with the Court's opinion that we need not overrule *Chastain* in order to conclude that Whitlow's ineffectiveness claim is not record based. I do believe, however, that in reaching this decision, we are required to modify, in part, our holding in *Chastain*. I now believe that our conclusion that "the statements of both prospective jurors . . . demanded, at a minimum, additional inquiry" was overbroad. *Chastain*, 285 Mont. at 65, 947 P.2d at 60. I still believe that the statements of the juror who indicated someone had attempted to abduct his sister and that it could prejudice his judgment unfavorably toward Chastain demanded additional inquiry. Faced with such a clearly expressed potential for bias against the defendant, I cannot think of a possible explanation for how counsel's decision not to further question or move to exclude this juror was the product of sound trial strategy. Thus, the lack of an explanation on the record for counsel's decision was not fatal to Chastain's claim with regard to the voir dire of this juror. This claim was indeed record based and could reasonably have been raised on direct appeal.

¶30 I note, however, that Chastain's trial counsel's decision not to further question or to move to exclude the juror who indicated that she remembered seeing an article about the case and that it may have evoked some strong feelings is not sufficient by itself to overcome the presumption that counsel's decision was the product of sound trial strategy. Unlike the first juror, this juror's statements were not such a clear expression of potential bias against the defendant that effective representation required further questioning. There

are numerous reasons why counsel may have reasonably believed that keeping this juror on the panel would further his client's interests. As with the instant case, without going beyond the trial record and discovering an explanation for counsel's decision, I can no longer conclude that trial counsel's decision constituted ineffective assistance. *See People v. Mendoza* (Cal. 2000), 6 P.3d 150, 172 (stating that claims of ineffective assistance must be denied "unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation for counsel's acts or omissions"). Accordingly, I would modify our holding in *Chastain* to reflect that counsel's decision not to further question or move to exclude this juror, without more, was not ineffective assistance.

/S/ JIM REGNIER

Justice James C. Nelson specially concurs and dissents.

¶31 I concur in our discussion and resolution of Issues 1 and 3. I agree with the result of Issue 2, but I disagree with our determination not to overrule *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57.

¶32 Aside from being legally incorrect, I suggest that in attempting to distinguish our decision in *Chastain*, we are going to cause more confusion than elucidation. The fundamental problem in both *Chastain* and the instant case is that, during *voir dire*, potential jurors made statements that arguably should have prompted some sort of follow-up questions from defense counsel.

¶33 In *Chastain*, the defendant raised on direct appeal the issue of defense counsel's failure to ask follow-up questions of jurors. *Chastain*, 285 Mont. at 62, 947 P.2d at 58. We concluded that in failing to follow-up, defense counsel had "abandon[ed] his client's right to challenge a juror *for no apparent reason*" with the result that "error must be attributed to the lawyer." *Chastain*, 285 Mont. at 65, 947 P.2d at 60 (emphasis added). Indeed, we held that this error of counsel deprived Chastain of his constitutional right to effective assistance of counsel. *Chastain,* 285 Mont. at 65, 947 P.2d at 60.

¶34 Importantly, we made these determinations from the existing record on appeal and without the necessity of further evidentiary development by way of a postconviction proceeding. We did not concern ourselves with *why* defense counsel failed to ask follow-up questions. Rather, it was enough--presumptively prejudicial, in fact--that he did not.

*Chastain*, 285 Mont. at 65, 947 P.2d at 60. And, we reached these conclusions from a record silent as to defense counsel's rationale or lack thereof.

¶35 Accordingly, to be logically consistent in the case at bar we should similarly conclude that Whitlow's failure to raise his *Chastain* claims on direct appeal statutorily bars those claims from postconviction review. Section 46-21-105(2), MCA. *See also State v. Hanson*, 1999 MT 226, ¶ 14, 296 Mont. 82, ¶ 14, 988 P.2d 299, ¶ 14 ("We consistently apply the statutory bar 'in order to prevent the abuse of postconviction relief by criminal defendants who would substitute those proceedings for direct appeal and in order to preserve the integrity of the trial and direct appeal.'") (citation omitted).

¶36 Concomitantly, if we are going to reverse and remand this case for a postconviction hearing, then we should overrule *Chastain*. And we should do so for more than simple logical and procedural consistency. *Chastain* was wrongly decided.

¶37 In *Chastain*, we had no more way of knowing why defense counsel failed to ask follow-up questions than we do in the case *sub judice*. In point of fact, we specifically acknowledged that Chastain's counsel failed to "challenge a juror *for no apparent reason.*" *Chastain,* 285 Mont. at 65, 947 P.2d at 60 (emphasis added).

¶38 Because the record is silent as to *why* defense counsel failed to ask follow-up questions, the *Chastain* issue is, thus, quintessentially a non-record based issue. Without an evidentiary hearing--which can only be accomplished in a postconviction proceeding--one can speculate all day long about why counsel did not ask follow-up questions. Maybe counsel had a tactical reason for not questioning the jurors in response to their *voir dire* answers; maybe he did not. The point is that without asking him or her, who knows? As we recently observed in *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, ___ P.3d ___, ¶ 20:

> Though not easily distilled into a formula, the definitive question that distinguishes and decides which actions are record and which are non-record is *why*? In other words, if counsel fails to object to the admission of evidence, or fails to offer an opening statement, does the record fully explain *why* counsel took the particular course of action? If not, then the matter is best-suited for post-conviction proceedings which permit a further inquiry into whether the particular representation was ineffective. Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court

review the matter on direct appeal.

¶39 Indeed, recognizing this common sense point we have consistently held that error will not be determined from a silent record where claims of ineffective assistance of counsel are at issue. Most recently we stated:

> First, as to St. John's allegation that his trial counsel was ineffective for failing to object to the court's not considering sentencing alternatives, the record is silent as to why St. John's counsel failed to act in the challenged manner. When the record does not provide the basis for the challenged acts or omissions of counsel, a defendant claiming ineffective assistance of counsel more appropriately makes his claims in a petition for postconviction relief. *See State v. Bromgard* (1995), 273 Mont. 20, 23, 901 P.2d 611, 613; *State v. Black* (1995), 270 Mont. 329, 338, 891 P.2d 1162, 1167-68; *State v. Courchene* (1992), 256 Mont. 381, 389, 847 P.2d 271, 276; *State v. Black* (1990), 245 Mont. 39, 43, 798 P.2d 530, 532-33. Accordingly, because we cannot address this aspect of St. John's ineffective assistance of counsel claim without considering matters outside the record, we decline to review this issue further. *See State v. Henry* (1995), 271 Mont. 491, 496, 898 P.2d 1195, 1198, *cert. denied*, 516 U.S. 1075, 116 S.Ct. 779, 133 L.Ed.2d 730 (1996).

*State v. St. John*, 2001 MT 1, ¶ 40, 304 Mont. 47, ¶ 40, 15 P.3d 970, ¶ 40.

¶40 Finally, logical and procedural inconsistency and legal error aside, I must also agree with the State. Since *Chastain* is still good law, then, at least in some cases, the prosecution will be deprived of any opportunity to demonstrate that defense counsel did not ask follow-up questions for a tactical reason. Now, in some cases, the failure of defense counsel to ask follow-up questions will be presumptively prejudicial. In other cases this failure will require an evidentiary hearing. In some cases, the silent record will result in automatic reversal; in other cases it will not. In some cases we will know (or at least try to find out) the *why* of defense counsel's omission; in other cases counsel's rationale or lack thereof will forever remain a mystery. In short, if there is a rule of law lurking somewhere in all of this, I am hard pressed to state what it is. And, of course, that is the problem.

¶41 Our approach here--parsing the sorts of *voir dire* responses for which the failure to follow up will be considered presumptively prejudicial--provides no guidance to the

practicing bar and will generate nothing but confusion along with the necessity to appeal every case involving a *Chastain* issue. Rather than opting for a clearly expressed rule, we have, to the contrary, muddied this area of the law immeasurably.

¶42 While I concur in the result of Issue 2, I would overrule *Chastain*, and I dissent from that portion of our discussion. I would hold that, absent counsel's rationale being clearly expressed on the trial record, a claim of ineffective assistance of defense counsel based on the accused's attorney's failure to ask follow-up questions of jurors on *voir dire* is not record based and, thus, is not an issue to be resolved on direct appeal.

¶43 Accordingly, I specially concur and dissent.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler concurs.

¶44 I concur with the majority's conclusion that Whitlow's petition for post-conviction relief was not procedurally barred based on his failure to raise his ineffective assistance of counsel claim on direct appeal.

¶45 I write separately to state that I do not believe this decision is in any way inconsistent with our decision in *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57.

¶46 I believe that *Chastain*, in its entirety, is factually distinguishable from this case and that there is nothing inconsistent about that decision and this decision.

¶47 Briefly, in *Chastain*, two jurors stated that they came to court with prior experience or prior knowledge that would impair their abilities to treat the defendant fairly. Having disclosed their bias or probable bias, no follow-up questions were asked to determine whether they could set their feelings aside and consider the State's claims based on the evidence and the law about which they would be instructed by the court. Neither juror was challenged for cause even though their admissions clearly brought them within the basis for disqualification set forth at § 46-16-115(2)(j), MCA, and neither juror was stricken by peremptory challenge even though defense counsel had six at his disposal pursuant to § 46-16-116, MCA. Both jurors served on the jury.

¶48 In this case three jurors expressed knowledge, feelings or a prior experience which could have indicated an inability to treat the defendant fairly. However, in each case

follow- up questions were asked by the county attorney and in each case the juror stated under oath that the prior knowledge, feeling or experience would not prevent him or her from being impartial. There was no statutory basis for challenging any of the three jurors in this case for cause and reasons for not exercising peremptory challenges are known uniquely to the attorney who does or doesn't exercise them.

¶49 The questions and answers involved in this case are set forth in the majority opinion. However, the striking contrast between the colloquies before us and in *Chastain* can only be evident by setting forth the relevant portions of the *Chastain* opinion. They are as follows:

> THE COURT: Let the record reflect the jury is not present.
>
> Q. [BY DEFENSE COUNSEL] I didn't mean to embarrass you or anything; but, from my trial strategy, you are a vital part of being on the jury or not on the jury, so my question is: You said you had strong feelings about the case?
>
> A. Well, not so much about this case. My little sister was abducted when she was about 16 years old, or actually she was driving a car and somebody jumped in her car. Fortunately she bailed out and he was caught, but I have really strong feelings about what could have happened, and it could taint my judgment.
>
> Q. Okay. It could?
>
> A. Uh-huh.
>
> Q. Um, of course, not favorably against the Defendant, probably-
>
> A. Probably not favorably, no.
>
> Q. Okay. That's all I needed to know. I just wanted to make sure we were in chambers.
>
> A. I wasn't going to say anything out there.
>
> THE COURT: Do you have any questions?

[COUNSEL FOR THE STATE]: No.

THE COURT: Thank you, sir.

Defense counsel did not challenge this prospective juror, who served on the jury.

In answer to the same voir dire question from defense counsel, a second member of the jury panel said that she remembered seeing an article about the case in the newspaper, but did not remember reading the article. Defense counsel questioned her as follows:

Q. From what you do remember, how does it affect your duty in this particular case?

A. I don't really know what to do.

Q. Do you think that what you've read would impair your judgment toward my client or towards the State?

A. It's hard for me to say. I do have--when I read about something like that, I do kind of evoke some strong feelings.

Counsel then asked the prospective juror to verify her name, but he did not further pursue this line of inquiry. Nor did he challenge her as a juror. The woman served on the jury.

*State v. Chastain*, 285 Mont. at 63-64, 947 P.2d at 59. (Emphasis added.)

¶50 If I shared Justice Nelson's view that distinguishing *Chastain* from the facts in this case is difficult, I would agree with his solution. However, there are at least two observations made in Justice Nelson's concurring opinion with which I disagree.

¶51 First, I disagree that there could have been a tactical explanation for counsel's failure to ask follow-up questions in *Chastain*. If counsel in that case had some direct knowledge about the juror's background which was sufficiently compelling to make such damaging statements irrelevant, then it makes no sense for counsel to have questioned the jurors about potential bias in the first place. Furthermore, it made no sense to seek court permission to examine at least one of the jurors outside the presence of the other jurors and then when given the opportunity, not further explore the basis for the juror's expressed

bias. There simply could be no non-record-based explanation for counsel's omissions in the *Chastain* case.

¶52 Second, I disagree with Justice Nelson's observations that in some cases "[T]he failure of defense counsel to ask follow-up questions will be presumptively prejudicial. In other cases this failure will require an evidentiary hearing." The difference as I see it is that the failure to ask follow-up questions from an admittedly biased juror who ends up serving on the jury is presumptively prejudicial whereas the failure to ask follow-up questions from jurors to whom follow-up questions have already been asked and who have denied bias is not presumptively prejudicial.

¶53 If there is a problem with *Chastain*, it is found in dicta alluded to by Justice Nelson which infers that we reversed that conviction because there was no record-based explanation for counsel's omissions. The opinion should have more correctly noted that there can be no explanation.

¶54 For these reasons, I concur with the majority's conclusion that Whitlow's petition for post-conviction relief is not procedurally barred. I question how, based on the facts in this case, ineffective assistance of counsel can be demonstrated. However, that issue is not before us.

/S/ TERRY N. TRIEWEILER

Justice Patricia O. Cotter joins in the foregoing concurrence.

/S/ PATRICIA COTTER